# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 1:05-cv-01102-DFH-TAB ) |
| ALANAR, INC., et al., | ) ) |
| Defendants, | ) ) |
| and | ) ) |
| CHURCHMEN'S INVESTMENT CORPORATION, et al., | ) ) ) |
| Relief Defendants. | ) |

## ORDER ADOPTING TRADE CREDITOR CLAIMS PROCEDURE

Bradley W. Skolnik, Court-appointed receiver (the "**Receiver**"), by counsel, having filed his "*Motion to Adopt Trade Creditor Claims Procedure*" (the "**Trade Creditor Claims Procedure Motion**"), requesting that this Court enter an order approving the proposed Trade Creditor Claims Procedure submitted by the Receiver, and the Court having considered the Trade Creditor Claims Procedure Motion, finds and orders as follows:

### I.

### BACKGROUND

1.  On July 26, 2005, the United States Securities and Exchange Commission (the "**Commission**") filed its Complaint in this action against numerous entities and Defendants, including Vaughn A. Reeves, Sr., Vaughn A. Reeves, Jr., Jonathan Christopher Reeves and Joshua Craig Reeves (collectively, the "**Reeves**"), alleging that the Reeves, through the

companies they created and controlled, including Defendant, Alanar, Inc. ("**Alanar**"), raised at least $120,000,000 through Bond Issues and $50,000,000 million through the sale of Bond Fund units;[1] that the Reeves violated federal securities laws by misusing the proceeds of the Bond Issues and the Bond Fund unit sales, by misapplying repayments from the churches issuing such bonds (the "**Issuers**"), and by making false and misleading statements to the purchasers and potential purchasers of the bonds or Bond Fund units. (*Findings of Fact and Conclusions of Law Regarding July 16, 2007 Evidentiary Hearing* (Docket No. 320) ("**Findings and Conclusions**")*, Procedural History, ¶1*).

2. Also on July 26, 2005, the Court entered an "*Order of Permanent Injunction and Other Relief*" (Docket No. 8) (the "**July 26, 2005 Order**") in which the Court appointed Mr. Skolnik as Independent Monitor with a mandate to protect the interest of bondholders and Bond Fund investors (the "**Investors**"). (*July 26, 2005 Order, Section IX.A.*). As Monitor, Mr. Skolnik was given final approval authority over the day to day operations of Alanar, Defendants, Guardian Services, LLC ("**Guardian**"), First Financial Services of Sullivan County, Inc. ("**First Financial**") and The Liberty Group, Inc. ("**Liberty**") (collectively, the "**Paying Agents**"), the Bond Funds named as Defendants in this action, the non-defendant Bond Funds, and certain entities named as Relief Defendants in the Commission's Complaint (collectively, the "**Relief Defendants**"). (*Findings and Conclusions, Procedural History, ¶2*).

3. On December 20, 2005, the Court entered its "*Order Granting Plaintiff Securities and Exchange Commission's Motion to Convert Monitorship to Receivership*" (Docket No. 73) (the "**Receivership Order")**, appointing Mr. Skolnik receiver for Alanar, the Defendant Bond

---

[1] The term "**Bond Issues**" means the hundreds of bond offerings conducted by Alanar on behalf of churches and other entities throughout the United States, as discussed herein. The term "**Bond Funds**" means the forty-two (42) limited liability companies (some of which are named as Defendants in this action), the offering of units in which was conducted by Alanar.

Funds, the non-defendant Bond Funds, the Paying Agents, and the Relief Defendants (collectively, the "**Receivership Defendants**"). (*Findings and Conclusions, Procedural History, ¶3*). The Receiver's powers and duties include the power to:

> Oversee all aspects of the operations of the Receivership Defendants with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to or in the possession of or control of the Receiver Defendants, and any of their subsidiaries or affiliates.

(*Receivership Order, Section III.1.a.*).

4. On April 13, 2007, the Receiver filed his "*Motion And Memorandum Concerning Proposed Plan To Pool Assets And Adopt Claims Procedure*" (Docket No. 230) (the "**Pooling Motion**") in which the Receiver alleged that the Reeves, utilizing the corporate instrumentalities of the Receivership Defendants, conducted a Ponzi Scheme and violated various securities laws. (*Pooling Motion, ¶¶12-29*).

5. On July 16, 2007, the Court held an evidentiary hearing in this action and heard arguments and evidence on the Pooling Motion and other plans for distribution of the assets of the Receivership Estate to Investors, including the Receiver's "*Unopposed Motion for Court to Consider Receiver's Alternative Plan for Disposition of Assets of Receivership Estate*" (Docket No. 295) (the "**Alternative Plan**"). (*Findings and Conclusions, Procedural History, ¶17*).

6. On August 28, 2007, the Court entered the Findings and Conclusions, and concluded that the Reeves' conduct had all the essential elements of a Ponzi Scheme. (*Findings and Conclusions, Conclusions of Law, ¶¶1-7*).

7. As part of the scheme, the Reeves caused funds to be transferred from the accounts of one Issuer to related entities or other Issuers. (*Findings and Conclusions, Findings of Fact, ¶¶9-14*). This was done to "make payments of principal and/or interest to Investors of

another Bond Issue that would otherwise have been in default." (*Findings and Conclusions, Conclusions of Law, ¶3*). This was an essential part of the Reeves' scheme, because they "underwrote large numbers of bond offerings and then shuffled money between accounts to hide the defaults which otherwise would have occurred. This scheme, and the apparent success of earlier Bond Issues, allowed the Reeves to continue to raise more and more money from unsuspecting Investors." (*Findings and Conclusions, Conclusions of Law, ¶7*).

8. When transfers were made,

> Alanar recorded this flow of money between accounts as receivables or payables on the books and records of each of the various Bond Issues. If a Bond Issue has a payable, the Reeves caused another Bond Issue to transfer money to it or used Bond Fund Investor proceeds to transfer the funds. If a Bond Issue has a receivable, the Reeves caused it to lend money to another Bond Issue. . . . The funds transferred were used to make payments to Investors or others, and as a result, are not available to repay the receivables.

(*Findings and Conclusions, Findings of Fact, ¶14*).

9. Also on August 28, 2007, the Court approved the Alternative Plan with certain modifications *(Findings and Conclusions, Conclusions of Law, ¶17.j.)*, and entered the "*Approved Alternative Alanar Receivership Plan*" (Docket No. 321) (the "**Approved Plan**") on the docket. Under the terms of the Approved Plan, the Receiver is required to establish a procedure "for specified third party creditors to file claims against pooled funds." (*Approved Plan, Section XI.1.*).

10. On June 24, 2008, the Receiver filed the Trade Creditor Claims Procedure Motion, requesting Court approval of a proposed procedure for the review and determination of Trade Creditor Claims (the "**Proposed Trade Creditor Claims Procedure**"). The Proposed Trade Creditor Claims Procedure is contained in Paragraphs 16-31 of the Trade Creditor Claims Procedure Motion.

4

11.     The Trade Creditor Claims Procedure Motion also established procedures to provide interested parties with notice of the Proposed Trade Creditor Claims Procedure and an opportunity to object or comment on the Proposed Trade Creditor Claims Procedure (the "**Objection Procedure**"). (*Trade Creditor Claims Procedure Motion, ¶¶32-41*).

12.     Notice of the Objection Procedure (the "**Objection Notice**") was (1) mailed to all Trade Creditors known to the Receiver at the addresses indicated in the Receiver's records; (2) published in the national edition of *USA Today* or *The Wall Street Journal*; and (3) posted on the Receiver's website (**www.alanarinfo.com**). The Court has reviewed all objections and comments timely and properly sent in response to the Objection Notice.

13.     The Court, having examined the Trade Creditor Claims Procedure Motion, including the Proposed Trade Creditor Claims Procedure, the Findings and Conclusions, the Approved Plan, the evidence presented by the Receiver in support of the Proposed Trade Creditor Claims Procedure, and having reviewed the comments and objections sent pursuant to the Objection Notice, now enters its Findings of Fact and Conclusions of Law.

## II.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     As indicated in the Findings and Conclusions entered by this Court, the Reeves' conduct had all the essential elements of a Ponzi Scheme. (*Findings and Conclusions, Conclusions of Law, ¶¶1-7*). Because of the extensive commingling of funds, the Approved Plan provides for Trade Creditor Claims against "pooled funds." (*Approved Plan, Section XI.1.*).

2.     In an equity receivership such as this, the Court has the power to fashion any distribution plan that is fair and equitable. *SEC v. Wang*, 944 F.2d 80, 84-85 (2d Cir. 1991); *see also SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 670-71 (6th Cir. 2001)

("Similarly, in the present case the district court carefully considered the Escrow Investors' arguments, the position of the other BEAR investors, and the facts of the case, and accordingly fashioned a distribution plan that was fair and equitable.  Thus, we cannot conclude that the district court has abused its discretion."); *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) ("'[i]n shaping equity decrees the trial court is vested with broad discretionary power . . . .'") (quoting *Quenzer v. United States*, 19 F.3d 163, 165 (5th Cir. 1993)); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership."); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("'[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'") (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).

5.The Court finds that it is in the best interests of the Receivership Estate, and is fair, reasonable and equitable, for the Court to adopt the Trade Creditor Claims Procedure attached hereto as **Exhibit A**.  Additionally, the Court further finds and orders that:

A.The proposed Proof of Claim Form attached as **Exhibit 1** to the Trade Creditor Claims Procedure Motion is hereby approved and adopted by the Court as fair, just and equitable;

B.The proposed letter to Trade Creditors summarizing the terms of the Trade Creditor Claims Procedure, attached as **Exhibit 2** to the Trade Creditor Claims Procedure Motion, is hereby approved and adopted by the Court as fair, just and equitable;

C.The Receiver is hereby directed to properly comply with the notice provisions of the Trade Creditor Claims Procedure as of the dates of this Order;

  D. The Court hereby establishes a Claims Bar Date, as defined in the Trade Creditor Claims Procedure, for Trade Creditors to file properly completed and documented Proof of Claim Forms with the Receiver on or before August 26, 2009. The Court determines that such a Claims Bar Date to be fair, just and equitable.

  6. The Trade Creditor Claims Procedure provides for notice to Trade Creditors by mailing and website posting of the Trade Creditor Claims Procedure; a right to file an objection to the Trade Creditor Claims Procedure with the Court; review of the Trade Creditor Claims Procedure by the Court; the right to request a redetermination of the ATCC or the validity of a Trade Creditor Claim from the Receiver; and the right to request adjudication by Court of any such request. In addition, the Receiver has expended significant effort to identify Trade Creditors and notify them of their potential claims and the steps to be taken to protect and assert such claims. These provisions and actions afford proper due process to Trade Creditors.

Dated: June 12, 2009

                _____
                DAVID F. HAMILTON, CHIEF JUDGE
                United States District Court
                Southern District of Indiana

Distribution to:

John Joseph Sikora, Jr.
UNITED STATES SECURITIES & EXCHANGE COMMISION
sikoraj@sec.gov

Jason A. Howard
UNITED STATES SECURITIES & EXCHANGE COMMISION
howardja@sec.gov

Bradley W. Skolnik
STEWART & IRWIN, P.C.
bskolnik@stewart-irwin.com

Michael J. Rusnak
David I. Rubin
HARRSION & MOBERLY, LLP
mrusnak@h-mlaw.com
drubin@h-mlaw.com

H. James Maxwell
hjmesq@kc.rr.com

Joshua D. Hague
Mark J.R. Merkle
KRIEG DEVAULT
jdh@kdlegal.com
mmerkle@kdlegal.com

Gordon J. Toering
WARNER NORCROSS & JUDD, LLP
gtoering@wnj.com

Nicholas A. Miller
INDIANA STATE ATTORNEY GENERAL
nmiller@atg.state.in.us

Charles L. House
ATTORNEY AT LAW
P.O. Box 26565
1100 Main
Kansas City, MO 64196

Vaughn A. Reeves, Sr.
11315 Expedition Way
Louisville, KY 40291

9

Vaughn A. Reeves, Jr.
5235 Terrace Ridge Drive
Milford, OH 45150

Jonathan Christopher Reeves
11315 Expedition Way
Louisville, KY 40291

Joshua Craig Reeves
832 6th Street
Bettendorf, IA 52722