UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:05-cv-1102-DFH-TAB ) ) |
| ALANAR, INC., et al., | ) ) |
| Defendants. | ) ) |

ENTRY ON OBJECTIONS TO SPECIAL MASTER'S REPORTS

Several investors in Alanar bonds have objected to the reports and recommendations of the court's special master regarding their "Adjusted Net Investor Claim" amounts. Those amounts will be used in allocating available assets among thousands of victimized investors. The court has reviewed the special master's reports and the objections and supporting materials. The court overrules the objections.

*Factual Background*

Plaintiff United States Securities and Exchange Commission filed this action against several members of the Reeves family and numerous "Alanar" entities for securities fraud executed through a Ponzi scheme. The defendants sold approximately $170,000,000 in bonds and interests in bond funds, supposedly

to help raise money for churches seeking loans to build and expand their ministries. The defendants looted the proceeds, but they kept the scheme going for several years, paying off the initial bond investors with the proceeds from later sales. Complicating matters considerably, the defendants mingled the funds from hundreds of bond issues and among scores of separate legal entities. Complicating matters further, some of the borrowing churches paid off their bonds completely, so some of the investors received all of their money and walked away.

The court appointed a receiver (Bradley Skolnik) to marshal as many assets as possible for distribution to the investors who were the victims of the Reeves' fraud. As in many Ponzi schemes, which can pay early investors well, the case presents significant problems for fairly allocating the available assets among the victims, especially where some early investors were paid off but then reinvested in new (losing) bonds. The court-appointed receiver proposed a plan for the allocation. Judge Tinder, who previously presided over this case, heard objections and modified the plan. In broad terms, because of the commingling of assets, the plan does not try to trace money among all of the different Alanar identities and bond issues. Tracing more precisely would have been prohibitively complex and unreliable. The plan seeks instead to pool all of the available assets for distribution among the victimized investors.

However, the plan divided the different bond issues into three broad categories: A, B, and Other. Category A bonds were those bonds for which the

bond issuer (typically a church) filed an election agreement by a stated deadline accepting the terms of the receiver's plan, and for which bond payments were either current, paid in full, or in the process of refinancing with a legitimate lender. (The full definition was more precise. See Dkt. No. 321.) Category A bonds were kept separate, and payments on those bond issues were allocated to the bond holders without pooling. Category B and Other bond issues consisted of all other bond issues, including those in which the bond issuers had fallen behind in paying their obligations.

As part of the plan for allocating the pooled assets among the victims, the key number is each investor's "ANIC," short for Adjusted Net Investor Claim. All investors eventually will be paid the same fraction of their respective ANICs from the pooled assets, so the ANIC calculation will have a direct effect on the money returned to each victim (though less, unfortunately, than dollar-for-dollar). Pursuant to the plan, the receiver and his staff calculated ANICs for all investors, notified them of those calculations, and invited the investors to provide additional information if they disagreed with the calculations. Pursuant to the court-approved plan, the receiver reached final decisions for each investor, and investors who were still dissatisfied with the decision could seek review from the court.

More than 100 of the thousands of investors objected to the receiver's final ANIC calculations. Based on the number of objections and the time needed to resolve them, the court appointed a special master, Charles E. Bruess, Esq.,

pursuant to Rule 53 of the Federal Rules of Civil Procedure, to conduct appropriate hearings and to make recommendations on those objections. The special master has done so, and five investors have asked the court to review those recommendations. The court reviews *de novo*, without deference, the special master's determinations of fact and law, though procedural rulings may be set aside only for abuse of discretion. See Fed. R. Civ. P. 53(f)(5). The court now turns to the specific objections.

I.    *William P. Acuff IRA*

In June 1995, Mr. Acuff paid $11,250 for five bonds from the Southwest Church of Christ and $250 for a bond from the ATO-Delta Kappa Housing Corporation. This last bond was paid off in 2002 with return of the principal of $250 and interest of $324, for a total of $574. The Southwest Church of Christ bonds were paid off in August 2003 with return of the $11,250 principal plus $37,033.55 in interest. In November 2003, Mr. Acuff invested $48,000 in an Alanar bond fund, from which he has received no return.

The receiver calculated that Mr. Acuff made total payments to Alanar entities of $59,500 and received payments from them totaling $48,857.65. His calculated ANIC was the difference, $10,642.35. Mr. Acuff argues that his ANIC should be $48,000, which was the amount he invested in November 2003 in an Alanar bond fund. He argues that the Southwest Church of Christ bonds should

-4-

be excluded from the calculation because they were not, in his view, part of the Ponzi scheme. In his view, those bonds should have been classified as Category A bonds, so that his payments and the interest he received in payment should not be included in the ANIC.

The Southwest Church of Christ bonds were previously classified by the receiver and then by the court as Category B bonds, in the court's order of June 27, 2008. Mr. Acuff has not provided a basis for reclassifying those bonds and re-opening that issue. The result is that Mr. Acuff's early investment in those bonds is treated as part of the investment that was paid off, and he then reinvested substantially all of the proceeds in a new Alanar bond fund. His ANIC is close to his original cash investment in the Alanar bonds. His objection to the special master's recommendation is overruled. The properly calculated ANIC for the William P. Acuff IRA is $10,642.35.

II.     *Carl V. Johnson IRA*

Carl Johnson's IRA account was the owner of 20 Category B or Other Alanar bonds and of one interest in an Alanar bond fund. Two of the bonds were repaid in full with interest. Ten remain outstanding with no payments having been made toward principal or interest, and eight were transferred to other owners at face value. The bond fund interest remains outstanding, and no payments have been made on that.

The receiver calculated that Mr. Johnson had made payments to Alanar entities totaling $160,750 and had received payments totaling $139,081.42, for an ANIC of $21,668.58. Mr. Johnson argued before the special master that a 1995 bond issued by New City Gospel Fellowship had been paid off in full, should have been classified as a Category A bond, and should have been excluded from the ANIC. The special master saw no basis for reclassifying the New City Gospel Fellowship bond and upheld the receiver's calculation of Mr. Johnson's ANIC. After Mr. Johnson submitted additional information, the special master issued a supplement to his report that again recommended upholding the receiver's original calculation.

The New City Gospel Fellowship never took the steps needed to have its bonds (including those that had been paid off) treated as Category A bonds. Mr. Johnson is the pastor of the church. His objection to the special master's recommendation recounts his and his church's frustrations in dealing with the Reeves defendants and then in communicating with the receiver and his staff. He offers explanations for why the church did not take steps to have its bonds classified as Category A.

The fact remains, however, as the special master found, that the church received timely information and never took steps necessary to have the bonds treated as Category A. The court agrees with the special master that it is too late to re-open the classification of those bonds for the benefit of parties who missed

-6-

opportunities to raise these issues in a timely manner. This issue could not fairly be re-opened without providing similar opportunities to re-open the issue for many other bond issues. That step would only add dramatically to the delay and expense in distributing the available but limited assets to the victimized investors. The receiver and the court provided a fair process and reasonable deadlines for resolving these issues. Mr. Johnson and his church missed them. It would not be fair to other victims to grant the relief Mr. Johnson seeks at this point. The court overrules the objections to the special master's report and recommendation. The properly calculated ANIC for Mr. Johnson is $21,668.58.

III.    *Charles W. Osburn*

Mr. Osburn invested in 43 different Category B and Other bonds in six different accounts that have been combined for these purposes. Eleven bonds had been repaid with interest, and some interest payments had been made on the other 32 bonds. The receiver calculated that Mr. Osburn had made total payments to Alanar entities of $142,250 and received total payments from Alanar entities of $92,643.97, for an ANIC of $49,606.03.

Mr. Osburn objected and requested full documentation of all payments made and received. He provided no additional information from his own records. The special master reviewed the matter and recommended that the receiver's ANIC calculation be deemed correct. The special master noted that if there were

problems in the payment records the receiver had relied upon, conflicting information should have been available to Mr. Osburn through IRA custodians or other account custodians. He also noted that Mr. Osburn had begun buying Alanar bonds in 1995 and was still buying bonds in 2005. The special master concluded that it was highly unlikely that he would still have been buying bonds if he had not been receiving appropriate payments on the earlier bonds, as the receiver's records indicated. The special master recommended that Mr. Osburn's objection be overruled.

Mr. Osburn did not comply with the specified procedure for objecting to the special master's recommendation. He did not file a document with the court, but instead sent a letter to the receiver. The court will overlook the procedural error for an investor coping with this unhappy circumstance. Mr. Osburn's letter is poignant and shows the pain and confusion caused by the Reeves' fraud. Mr. Osburn would like clearer explanations of the efforts to sort out this mess. Mr. Osburn also insists on "payment for all principal and interest rightfully due me for my investments with Alanar and its associated entities." The court (together with the receiver and special master) wishes it were possible to honor that request, but it is not. The Reeves stole much of the money invested through Alanar. Too much of that money is gone, which is why we are going through this process. Neither Mr. Osburn nor other investors will receive all of the principal and interest they are rightfully due.

Mr. Osburn has not come forward with evidence that would require correction or modification of the receiver's calculation of his ANIC, so the court must overrule his objection to the special master's recommendation. His correct ANIC for all of the accounts combined is $49,606.03. Mr. Osburn will receive the fraction of his ANIC that other investors receive of theirs.

IV.     *Mary E. Peterman, Living Trust*

Mrs. Peterman purchased eight Category B or Other Bonds. Six of them were paid off entirely, and partial payments were made on two. The Receiver calculated that she had made total payments of $76,500 and had received total payments of $75,578.53, for an ANIC of $921.47.

Mrs. Peterman contends that her ANIC should be $4,500, which is the face value of the two bonds that remain outstanding. She contends that the Category B and Other bond issues that were paid off should have been excluded from the calculation. Her case is another example of an investor whose earlier investments were paid off, apparently with the proceeds raised from later investors. It is not possible to achieve perfect justice among all investors. The court has previously explained the reasons for pooling all of the Category B and Other bonds, which has effects like this on Mrs. Peterman. Her objection to the special master's recommendation is overruled. Her correct ANIC is $921.47.

V.   *Robby Phillips and Larry L. Phillips, JTWROS*

Robby and Larry L. Phillips jointly purchased four Category B or Other bonds and an interest in an Alanar bond fund. The Phillipses bought all four of the bonds in 1994 for a total cost of $26,000. All four were repaid in 2000 or 2001, with the full principal plus interest of more than $22,000. A month after the payments in 2001, the Phillipses rolled $38,000 into an Alanar bond fund, from which they have received no payments.

The receiver calculated that they had made payments totaling $64,000 and had received payments totaling $48,410.04, for an ANIC of $15,589.96. The Phillipses asked the special master to consider two issues. First, they objected to including the bonds that had been paid off but classified as Category B. Second, they argued that their ANIC should be calculated based on the stated balance of their bond fund account statement as of August 12, 2005.

The special master found no basis for reclassifying the Category B bonds and excluding them from the ANIC calculation. The special master also rejected the reliance on the stated balance on the bond fund account. All of the ANIC calculations in the case have been done strictly on a cash basis, without allowing for any hypothetical or promised interest or growth in investments. The special master therefore upheld the receiver's calculation of ANIC.

Rob Phillips' objection to the special master's report does not directly challenge either of these points. Instead, he requests more time to find cancelled checks or other evidence of additional payments he made. He also asserts without explanation that his original investment was less, and he questioned the combination of his and Larry Phillips' investments. He also said there is a $1,000 error in the calculation of the ANIC.

The court finds that Mr. Phillips has already had ample time to find evidence of additional payments. The special master left the record open after the hearing for Mr. Phillips to submit a letter, but none was submitted. The need for additional evidence has been known since 2008 when the receiver made the ANIC calculations and sent them to investors. We cannot wait indefinitely. Each ANIC calculation affects all of the other investors' distributions. The account in question was designated as a joint tenancy with rights of survivorship for both Rob Phillips and Larry Phillips, so there was no error in combining their investments and payments to calculate one ANIC for the account. The asserted $1,000 error is not explained or evident to the court. The court overrules the objections to the special master's recommendation. The correct ANIC is $15,589.96.

*Conclusion*

The objections to the special master's reports and recommendations are overruled, and the court adopts as its own the factual findings, conclusions of law, and final ANIC calculations of the special master for investors William P. Acuff IRA, Carl V. Johnson, Osburn, Mary Peterman, and Robby and Larry Phillips.

So ordered.

Date: January 12, 2010

DAVID F. HAMILTON, CIRCUIT JUDGE*
*sitting by designation

Copies to:

Anne L. Cowgur
BINGHAM MCHALE LLP
acowgur@binghammchale.com

Joshua D. Hague
KRIEG DEVAULT LLP
jdh@kdlegal.com

Charles L. House
ATTORNEY AT LAW
P O Box 26565
1100 Main
Kansas City, MO 64196

Jason Adam Howard
U.S.SECURITIES AND ECHANGE COMMISSION
howardja@sec.gov

H. James Maxwell
hjmesq@kc.rr.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Brett J. Miller
BINGHAM MCHALE LLP
bmiller@binghammchale.com

Nicholas Anthony Miller
INDIANA OFFICE OF THE ATTORNEY GENERAL
nmiller@atg.state.in.us

David I. Rubin
HARRISON & MOBERLY
drubin@h-mlaw.com

Michael Joseph Rusnak
HARRISON & MOBERLY
mrusnak@h-mlaw.com

John Joseph Sikora, Jr.
US SECURITIES & EXCHANGE COMMISSION
sikoraj@sec.gov

Bradley W. Skolnik
STEWART & IRWIN P.C.
bskolnik@stewart-irwin.com

JOSHUA CRAIG REEVES
832 6th Street
Bettendorf, IA 52722

VAUGHN A. REEVES, SR.
11315 Expedition Way
Louisville, KY 40291

VAUGHN A. REEVES, JR.
5235 Terrace Ridge Dr.
Milford, OH 45150

JONATHAN CHRISTOPHER REEVES
11315 Expedition Way
Louisville, KY 40291-5090

William Phares Acuff
1320 Timberridge Loop N.
Lakeland, FL  22809

Carl Johnson, IRA
20 Greenridge Way
Spring Valley, NY  10777

Carl and Diana Johnson, JTWROS
20 Greenridge Way
Spring Valley, NY 10777

Charles Osburn
Toby Osburn
908 Aberdeen Drive
Lake Charles, LA  70605

Charles Osburn
Toby Osburn
10854 Osburn Road
Pilot Point, TX  76258

Mary Ellen Peterman Rev. Living Trust
6504 Creek Forest Drive
Indianapolis, Indiana  46227

Robby L. Phillips and Larry L. Phillips, JTWROS
1411 Spencer Pike Road
Springville, IN  47462

Charles E. Bruess
Special Master
cbruess@indy.rr.com